UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SUSAN MITCHELL, | Case No. 2:19-cv-00903-EJY |
| Plaintiff, | **ORDER** |
| v. | Re: Plaintiff's Motion for Reversal and/or Remand |
| ANDREW SAUL, Acting Commissioner of Social Security,[1] | (ECF No. 19) |
| Defendant. | |

Plaintiff Susan Mitchell ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons below, the undersigned affirms the Commissioner's adverse disability determination.

## I.   BACKGROUND

On October 10, 2014, Plaintiff filed an application for SSI alleging an August 15, 2014 onset of disability.[2] Administrative Record ("AR") 240-47. The Commissioner denied Plaintiff's claims by initial determination on March 27, 2015, and upon reconsideration on December 1, 2015. AR 111-18, 125-32. On January 22, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 133. After conducting an in-person hearing on April 20, 2018 (AR 35-53), ALJ Norman L. Bennett issued his determination on May 17, 2018, finding Plaintiff not disabled (AR 15-28). On June 26, 2018, Plaintiff requested that the Appeals Council review the decision by the

---

[1]   Andrew Saul is the current Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2]   Plaintiff also applied for disability insurance benefits ("DIB") under Title II of the Social Security Act. AR 236-39. However, Plaintiff withdrew her DIB application at her administrative hearing (AR 37) because her onset date of disability fell outside the period of coverage for DIB. AR 18, 55.

ALJ. AR 233-35. When the Appeals Council denied Plaintiff's request for review on March 27, 2019, the ALJ's decision became the final order of the Commissioner. AR 1-7. This civil action followed.

## II.     STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.     DISCUSSION

### A.     Establishing Disability under the Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)     the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

2

> (b)  the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

> The five steps are:
>
> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")],

3

or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098-99 (internal alterations omitted).

### B. Summary of the ALJ's Findings

At step one, the ALJ determined the Plaintiff did not engage in substantial gainful activity since January 16, 2013. AR 21. At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with radiculopathy[,] and obesity."[3] *Id*. At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

In preparation for step four, the ALJ found Plaintiff had the residual functional capacity ("RFC")[4] to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) consisting of lifting or carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for up to 6 hours in an 8-hour workday; and sitting for up to 6 hours in an 8-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, but never climb ropes, ladders or scaffolds. She is not able to perform work at unprotected heights or around dangerous moving machinery.

AR 22-23.

At step four, the ALJ determined that "[t]he claimant has no past relevant work." AR 27. In preparation for step five, the ALJ noted that:

> [t]he claimant was born on August 1, 1967, and was 45 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date . . . . . . The claimant has at least a high school education and is able to communicate in English[.] . . . Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

---

[3] The ALJ considered the effects of obesity in his findings, recognized that Plaintiff failed to establish that any of her alleged "migraines headaches, recurrent shingles and dizziness . . . rose to the level of a 'severe' impairment as defined by the Act and Regulations," and determined Plaintiff's alleged shoulder problems did not constitute a medically determinable, let alone severe, impairment. AR 22.

[4] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

4

>framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . .

*Id.*

At step five, the ALJ found there are jobs that exist in significant numbers in the local and national economies that the claimant can perform including the following light exertional level, unskilled representative occupations:

>1.   Assembler of small products, DOT number 706.684-022, of which there are 1,100,000 such jobs nationally, and 1,100 jobs in the State of Nevada; and,
>2.   Inspector, DOT number 559.687-074, of which there are 109,000 such jobs nationally, and 1,000 jobs in the State of Nevada; and,
>3.   Marker, DOT number 209.587-034, of which there are 108,000 such jobs nationally, and 1,800 jobs in the State of Nevada.[5]

*Id.* The ALJ confirmed that the vocational expert's testimony is consistent with the information found in the DOT. AR 28.

The ALJ concluded that, "[t]he claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2013, through the date of this decision[.]" *Id.* Accordingly, the ALJ denied Plaintiff's application for SSI because the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id.*

**C.   Plaintiff's Symptom Testimony**

On examination by the ALJ at her administrative hearing, Plaintiff testified that she was 50 years old. AR 39. Plaintiff is five feet one inches in height and weighs 200 pounds. *Id.* Plaintiff lives at home with her thirteen-year-old son. AR 39-40. Plaintiff knows how to drive a car and is in possession of a driver's license without restrictions. AR 40. Plaintiff completed her education up to the tenth grade and has not taken any schooling or vocational training since high school. *Id.* Plaintiff cannot work now because she gets dizzy after standing for long periods of time, has trouble gripping objects, and feels "[c]onstantly exhausted." AR 41. Plaintiff's counsel noted that Plaintiff suffers from recurrent shingles, in addition to degenerative disk disease in her cervical and lumbar spines. *Id.*

---

[5]   "DOT" is an abbreviation for *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).

1         On examination by her counsel, Plaintiff testified that the pain in her neck is aggravated
2 when she reaches for items, and that she cannot sit "through a whole movie for a couple [of] hours"
3 or else she will have to "get up and move and walk for a little bit." AR 42. Plaintiff often has her
4 son help walk the dogs because the dogs "pull ahead." *Id*. Plaintiff rests her neck at a downward
5 angle and she starts to get dizzy in the back of her head whenever she lifts her neck up. AR 43.
6 Plaintiff's dizziness puts her off balance. *Id*. Plaintiff has difficulty grasping objects, including her
7 phone, pens, bottles, jars, and kitchen equipment for dicing, for extended periods of time. AR 43-
8 44. Plaintiff experiences tingling sensations in her hips, legs, and thighs. AR 44. Plaintiff has
9 problems bending over at the waist due to her weight gain. *Id*. Plaintiff's pain is more centralized
10 in her neck and not as bad in her bottom spine. *Id*. Plaintiff sometimes experiences spasms through
11 the right side of her shoulder and arm when grabbing objects or making sudden movements. AR 45.

12         Plaintiff gets migraines up to three times per week. AR 46. Plaintiff's migraines agitate her,
13 make her sick to her stomach, and cause her to throw up. AR 46-47. Plaintiff gets shingles
14 approximately twice a year, which affect her for about six to eight weeks at a time. AR 47-48. When
15 answering questions by her counsel and the ALJ regarding the frequency of her shingles, Plaintiff
16 testified that she has records showing she last suffered from an onset of an infection in February
17 2018. AR 48. Prior to that, Plaintiff suffered from an outbreak in June or July 2017. *Id*.

18         Plaintiff was previously treated by a therapist for her pain, which gave her brief periods of
19 relief. AR 45. Plaintiff visited a doctor to schedule injections for her neck and back pain, but her
20 physician recommended surgery instead. *Id*. At the time of the administrative hearing, Plaintiff was
21 scheduled to visit a surgeon for upper back treatment. AR 45-46.

22         Plaintiff's "house is a mess" because she takes days to complete her chores, including
23 washing the dishes and doing the laundry. AR 47. On the morning of the administrative hearing, it
24 took Plaintiff about six minutes to walk her son to his school bus stop. AR 49-50. Plaintiff can only
25 stand for approximately six to eight minutes, needs to "[p]rop pillows in all different directions to
26 adjust" when sitting, "constantly rest[s,]" and is "always tired." AR 50-51.

**D.     Vocational Expert ("VE") Testimony**

VE Victoria Rei testified at Plaintiff's administrative hearing that Plaintiff does not have any past relevant work. AR 51. The ALJ asked the VE to imagine a hypothetical individual:

> who can lift 20 pounds occasionally, 10 pounds frequently, . . . can stand and walk up to 6 [hours] in 8 [hours], sit up to 6 [hours] in 8 [hours], with occasional postural all except for no climbing of ladders, ropes and scaffolds, and no work hazards such as working around heights or dangerous moving machinery. Are there any jobs in the U.S. economy that such an individual can perform?

*Id*.

The VE replied that the hypothetical individual would be able to perform the light duty Specific Vocational Preparation ("SVP") level 2 positions of "assembler of small products," DOT number 706.684-022; "inspector," DOT number 559.687-074; and, "marker," DOT number 209.587-034. AR 51-52. The VE also listed the number of available positions for each occupation in the national economy and in Nevada. *Id*.

On examination by Plaintiff's counsel, the VE was asked if the hypothetical individual would still be able to perform the occupations above if he or she were to miss two days of work per month because of migraines. *Id*. The VE replied that such a situation would eliminate the prospect of jobs altogether.[6] *Id*.

**E.     Issues Presented**

Plaintiff contends the ALJ erred by rejecting her testimony concerning her pain, symptoms, and level of limitation because the "objective [medical] evidence shows significant findings" supporting her pain symptoms complaints (ECF No. 19 at 8:8; *see also id*. at 8:9-11:17); Plaintiff's pain was not sufficiently managed with conservative treatment (*id*. at 14:3-23); and, the ALJ failed to explicitly identify Plaintiff's daily living activities as a reason to reject her pain testimony.[7] *Id*. at 15:1-24. The Court notes that the ALJ relied on the state agency physicians' opinions in discounting

---

[6] In formulating her response to Plaintiff's attorney's question, the VE relied on her thirty years of "vocational rehabilitation experience as neither the DOT nor the SCO [*Selected Characteristics of Occupations Defined in the Revised DOT*] address absences." AR 52.

[7] Plaintiff also argues the ALJ erred in discounting her symptoms complaints because she has not followed her prescribed course of treatment. ECF No. 19 at 11:18-14:2. However, the ALJ did not rely on Plaintiff's alleged noncompliance with treatment as an independent reason to discount her pain testimony, but, rather, it appears the ALJ discussed Plaintiff's referral for surgical evaluation in his review of the objective medical evidence. AR 25.

Plaintiff's symptoms complaints, although Plaintiff fails to address these opinions in her Motion for Reversal and/or Remand.  AR 26.  The Court analyzes each of these findings below.

### 1. The ALJ's Credibility Determination

The ALJ must engage in a two-step analysis when evaluating whether a claimant's testimony concerning pain, symptoms, and level of limitation is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), *citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[8]  *Garrison*, 759 F.3d at 1014-15 (internal citation omitted).  An ALJ's finding on this matter must be properly supported by the record and be sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (internal citation omitted).

In weighing a claimant's credibility for cases involving ALJ decisions rendered on or after March 28, 2016, including the present case, the ALJ may consider a claimant's:  (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or

---

[8] In his Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal/Remand, Defendant "maintains that [the clear and convincing reasons] standard [when reviewing an ALJ's decision to discredit a claimant's allegations] is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings . . . ." ECF No. 25 at 5 n.6. Notwithstanding, the Ninth Circuit has employed the clear and convincing reasons standard when reviewing an ALJ's decision to discredit a claimant's allegations. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006).  The Court is bound to follow Circuit precedent.

other symptoms.[9] Social Security Ruling ("SSR") 16-3p (eff. Mar. 16, 2016), 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record . . . [to] determine how symptoms limit ability to perform work-related activities[.]" SSR 16-3p, 2016 WL 1119029, at *2. Notwithstanding, a claimant's statements about his pain or other symptoms alone will not establish that he is disabled. 20 C.F.R. § 416.929(a)(1); 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). A claimant is not entitled to benefits under the Social Security Act unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Plaintiff argues the ALJ erred by failing to articulate clear and convincing reasons for discounting her subjective complaints. ECF No. 19 at 8:1-3. At step one of the *Garrison* analysis, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 26. At step two, however, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" *Id*. The Court examines the ALJ's findings below.

> a. The ALJ properly discounted Plaintiff's symptoms complaints as unsupported by objective medical evidence.

When determining the extent of a claimant's symptoms, the ALJ must consider whether there are any conflicts between the claimant's statements and the objective medical evidence. 20 C.F.R. § 416.929(c)(4). However, an ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 346-47; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. The objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain

---

[9] SSR 96-7p was superseded by SSR 16-3p on March 16, 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." However, both rulings require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms.

9

or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). SSR 16-3 provides that the disability "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

Plaintiff argues the ALJ merely summarized the objective medical evidence and, therefore, failed to provide specific reasons to discount the specific aspects of Plaintiff's testimony that establish disability. ECF No. 19 at 7:26. It is true that "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). In this case, however, the ALJ provided specific reasons to discount Plaintiff's symptoms complaints based on, *inter alia*, the following inconsistencies with the objective medical evidence:

- During a September 2014 visit to the Advanced Pain Management Center, Plaintiff complained of "sharp and throbbing pain in the neck, shoulders, and low back, and displayed mild discomfort and tenderness, limited range of motion, and sensory deficit in the right cervical and lumbar areas" (ECF No. 25 at 7:5-7, *citing* AR 24, 426-28), but displayed "normal cervical lordotic curve and muscle strength as well as no muscle atrophy in her upper extremities" (AR 24) and had "negative straight leg raise test, normal gait and normal flexion." *Id*.

- In September 2016, Plaintiff had "intact finger-nose-finger and rapid alternating movements and no overt dysdiadochokinesia. She was able to stand up from a low sitting position with assistance," despite being "unsteady on heel, toe and tandem walking." AR 25. Plaintiff also "had intact sensation to higher and lower sensory modalities bilaterally and full muscle strength, tone, and bulk throughout." *Id*.

- In October 2017, Plaintiff presented with a normal curvature of the spine, negative straight leg raising test, full strength in all muscle groups, symmetrical tendon reflexes, intact sensation to light pinprick, and normal gait, despite exhibiting tenderness and decreased range of motion in her neck. *Id*.; *see also* AR 645.

On this record, the ALJ reasonably concluded that Plaintiff's symptoms complaints were uncorroborated by the objective medical evidence. Plaintiff nevertheless cites to other medical evidence in the record, the majority of which the ALJ already addressed in his findings, to support

her pain testimony. *Compare* ECF No. 19 at 8:9-11:14 *with* AR 24-26. While a different interpretation of the medical evidence could be made, the Court upholds the ALJ's rational interpretation of the record. *Batson*, 359 F.3d at 1198 (providing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed by a reviewing court. *Rollins*, 261 F.3d at 857. Further, the ALJ did not discount Plaintiff's testimony solely based on its inconsistency with the objective medical evidence. This is significant because an ALJ may not discredit a claimant's symptom testimony only because the degree of the symptoms alleged is not supported by objective medical evidence. *Id.* As discussed below, the ALJ properly found Plaintiff's symptoms complaints unsupported by her failure to follow prescribed treatment and contradicted by the efficacy of her conservative treatment. AR 23-25. Moreover, Plaintiff failed to challenge the opinions of the state agency physicians, both of whom found that she could perform light work with occasional postural activities and, therefore, Plaintiff waived any argument she may have had concerning these opinions. AR 26; *see also Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1998) ("[a]rguments not addressed in a brief are deemed abandoned"). Accordingly, the ALJ properly discounted Plaintiff's symptoms complaints as unsupported by the objective medical evidence.

        b.    <u>The ALJ properly found Plaintiff's symptom testimony inconsistent with the effectiveness of her conservative treatment.</u>

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). A favorable response to "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal citation omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (a claimant's favorable response to conservative treatment including physical therapy, anti-inflammatory medication, a

transcutaneous electrical nerve stimulation unit, and a lumbosacral corset was a clear and convincing reason to support the ALJ's adverse credibility finding).

The ALJ appropriately discounted Plaintiff's pain testimony as she reported improvement with conservative treatment measures such as medication and physical therapy. AR 24-25. In support, the ALJ cited to Plaintiff's self-reports that "60% of her pain" was relieved following multiple therapy sessions in June 2015, and improvement in her ability to move her neck in August 2016. *Id*. at 24; *see also* AR 526, 561. The ALJ also noted that Plaintiff had not seen a neurosurgeon as of the date of his decision despite being referred to a neurosurgeon for evaluation. AR 25; *see also* AR 503-14. Although Plaintiff was initially prescribed opioid medication (*i.e.*, morphine and oxycodone), she was denied refills after toxicology checks returned negative results in January 2017. AR 25; *see also* AR 543, 557. After discontinuing her opioid medication, Plaintiff reported pain levels "at only between a 4-5 on a 10-point scale on average" in February 2018, indicating that her pain was sufficiently managed with conservative, non-opioid medication. AR 26; *see also* AR 632-41.

Plaintiff counters that her symptoms were not effectively managed with conservative treatment (ECF No. 19 at 14:3-4 (internal citation omitted)) and, therefore, she would soon undergo extensive treatment. *Id*. at 11:18-19 (internal citation omitted). In support, Plaintiff states that she had an upcoming appointment with a surgeon scheduled at the time of her administrative hearing. *Id*. at 11:26-12:2. Plaintiff's counsel claims Plaintiff had "initially set an appointment with a surgeon approximately one and a half years prior" to the administrative hearing (*id*. at 12:3-4 (internal citation omitted)), and that her failure to receive surgery during this time "*appears* . . . [to be] due to problems with the referral, rather than a failure to follow-up." *Id*. at 12:12-13 (emphasis added).

The Court finds Plaintiff's assertions unpersuasive. At her administrative hearing, Plaintiff did testify that her surgery was delayed because she was "notified that the surgeon would be out of town and she would need a new referral" eight months after her initial appointment. *Id*. at 12:4-6, *citing* AR 46. However, in her Motion for Reversal and/or Remand Plaintiff concedes that she told her provider she "did not want surgery" when it was initially scheduled. *Id*. at 12:8, *citing* AR 620.

It is therefore, at best, unclear why Plaintiff failed to receive surgery during the relevant period.[10] In any event, the ALJ did not discount Plaintiff's symptoms complaints because of her failure to undergo more extensive treatment but, rather, because her symptoms were effectively managed with conservative treatment. AR 24-25.

Plaintiff argues it was improper for the ALJ to discount her opioid medication regimen based on her abnormal toxicology results. ECF No. 19 at 12:18-20. At least one Ninth Circuit Judge has held, albeit in a dissenting opinion, that "powerful narcotic painkillers," including "morphine," do not constitute conservative treatment.[11] *Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (Watford, J., dissenting). However, even if the ALJ erred in failing to characterize Plaintiff's morphine and oxycodone medications as non-conservative treatment, this error was harmless; accordingly, the Court may not reverse the ALJ's decision on this basis. *Burch*, 400 F.3d at 679. That is, the ALJ properly found Plaintiff's physician stopped prescribing her opioid medication in January 2017 (AR 25 (internal citations omitted)) yet, in February 2018, more than a year after she ceased use of such medication, Plaintiff reported that her pain was sufficiently managed with non-opioid medication. AR 26 (internal citation omitted).

In contrast, Plaintiff avers that the objective findings at her February 2018 visit, including her "tenderness to palpation in the cervical spine, decreased range of motion, diminished sensation to light touch in the bilateral upper extremities, and decreased strength in the bilateral upper extremities," indicate that her pain was not completely managed with non-opioid medication. ECF No. 19 at 14:13-16, *citing* AR 634. It may be true that Plaintiff's physical examination results raise an apparent conflict with the pain relief she reported at the same visit. AR 623. Notwithstanding, it is the ALJ's role to interpret and resolve conflicts and ambiguities in the evidence: where there may

---

[10] If there was evidence in the record to demonstrate that Plaintiff affirmatively failed to follow up with her surgery referral, the Court would have upheld the ALJ's adverse disability determination on that basis. *Yanez v. Astrue*, 252 F. App'x 792, 794 (9th Cir. 2007) (affirming the ALJ's denial of disability insurance benefits where a claimant "put off scheduling . . . surgery despite his claims of debilitating pain.").

[11] The Court did not find a Ninth Circuit decision that discusses whether oxycodone medication constitutes conservative treatment. However, the Ninth Circuit has found an ALJ erred in discounting a claimant's pain testimony where she declined to take oxycodone due to "her fear of becoming addicted to narcotics." *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). In this case, Plaintiff provides no such justification to deviate from her opioid medication and, more relevant to our discussion, her symptoms were sufficiently managed with conservative treatment. AR 24-25.

1 be more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Here, the ALJ reasonably found Plaintiff experienced some improvement of symptoms with conservative, non-opioid treatment, notwithstanding the treatment's inability to alleviate all her symptoms. *Shannon v. Astrue*, No. 2:11-cv-00394-JCM, 2012 WL 7850900, at *11 (D. Nev. Oct. 9, 2012) ("the ALJ provided clear and convincing reasons for finding [the claimant] not credible. . . . For example, the ALJ considered the fact that Plaintiff . . . experienced *some improvement* in panic attacks while on medication") (emphasis added). Based on the substantial evidence summarized above, the ALJ reasonably concluded that Plaintiff's impairments when treated conservatively were not as limiting as she claimed. This finding is a clear and convincing reason to discount Plaintiff's symptoms complaints.

    c. <u>The ALJ properly considered Plaintiff's daily activities in discounting her symptoms complaints</u>.

The ALJ may consider a claimant's activities that undermine reported symptoms when deciding whether a claimant's testimony about her symptoms should be discredited. *Rollins*, 261 F.3d at 857. "Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted).

It is unclear whether the ALJ specifically rejected Plaintiff's symptoms complaints as inconsistent with her daily activities. Instead, it appears the ALJ generally cites to Plaintiff's function report in his findings explaining that Plaintiff was able to care for her son by taking him to and from school, helping him with his homework, and preparing meals for her family. AR 23; *see also* AR 298-308. Plaintiff also stated on her functions report that she shops for groceries, attends weekly church service, and participates in her son's Boy Scout events and school programs. AR 23 (internal citation omitted). Even if the ALJ did not specifically find Plaintiff's pain testimony inconsistent with these daily activities, the Commissioner correctly points out that the ALJ is "entitled to consider and weigh Plaintiff's activities and statements regarding her ability to engage in activities when deciding whether her subjective testimony of disability was reliable." ECF No.

25 at 12:7-10 (internal citations omitted); *see also* SSR 16-3p ("daily activities" are a factor to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms). Therefore, the ALJ properly considered Plaintiff's daily activities in evaluating her symptoms complaints.

          d.      <u>Plaintiff fails to challenge the state agency physicians' opinions and, therefore, waived any argument she may have had on this basis</u>.

The ALJ may consider in testimony evaluation "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59. As the ALJ discussed, two state agency physicians reviewed the record and found Plaintiff could perform light work with at least occasional postural activities. AR 26; *see also* AR 73-75, 89-92. Plaintiff does not challenge these opinions in her motion; therefore, she waived any argument she may have had regarding the ALJ's reliance on these opinions. *Wilcox*, 848 F.2d at 1008 n.2. As such, the Court upholds the ALJ's assignment of weight to the state agency physicians' opinions, both of which undermine Plaintiff's allegations of disabling symptoms and limitations. AR 26.

## IV.    CONCLUSION

The ALJ appropriately found, using the clear and convincing standard, that Plaintiff's testimony regarding her pain, symptoms, and level of limitation should be rejected as unsupported by the objective medical evidence and inconsistent with the efficacy of her conservative treatment. The ALJ properly considered Plaintiff's reported daily activities in discounting her symptoms complaints. Plaintiff failed to challenge, and therefore waived any arguments concerning the state agency physicians' determinations that she could perform light work with at least occasional postural activities. Accordingly, this Court affirms the ALJ's adverse disability determination.

15

## V. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 19) is DENIED, and that Defendant's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal/Remand (ECF No. 25) is GRANTED.

Dated this 30th day of June, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE